**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- X

TYREIK WILLIAMS,

                             Plaintiff,

        -against-

THE CITY OF NEW YORK, a municipal entity;
New York City Police Officers WILLIAM
CONCANNON (Shield #023380), NICHOLAS
LEVESQUE (Shield #15044), Sgt. EDWIN CHING
(Shield #1578), Sgt. FRANKLIN BOHR (Shield
#02618), and "JOHN and/or JANE DOES" Nos. 1,
2, 3, etc. (whose identity are unknown but who are
known to be personnel of the New York City Police
Department), all of whom are sued individually and
in their official capacities.

                            Defendants.

-------------------------------------------------------------------- X

**No. 15-cv-3123 (CM)**

**FIRST AMENEDED
COMPLAINT**

**JURY TRIAL**

        PLAINTIFF TYREIK WILLIAMS ("PLAINTIFF"), by his attorneys, Beldock

Levine & Hoffman LLP, as and for his complaint, alleges as follows:

## PRELIMINARY STATEMENT

        1.     This civil rights action seeks redress under 42 U.S.C. § 1983 and New

York State law for injuries PLAINTIFF sustained from the unconstitutional conduct of

defendants THE CITY OF NEW YORK, New York City Police Officer WILLIAM

CONCANNON (Shield #023380), NICHOLAS LEVESQUE (Shield #15044), Sgt.

EDWIN CHING (Shield #1578), Sgt. FRANKLIN BOHR (Shield #02618, and "JOHN

and/or JANE DOES" Nos. 1, 2, 3, etc.

        2.     On or about the night of June 27, 2014, the defendant police officers

arrested PLAINTIFF without any suspicion or probable cause that he was engaged in

illegal activity.  PLAINTIFF was present in the living room of Chirelle Yon's apartment

in the Bronx, New York, waiting for his girlfriend to finish styling Ms. Yon's hair when defendant police officers arrived claiming to have a warrant to arrest Ms. Yon's nephew, Gerard Jones.  Although PLAINTIFF did not know Gerard Jones, had never been in Jones' presence, and was not in Jones' room when the police arrived, the defendant police officers arrested PLAINTIFF and falsely charged him with baseless weapons related offenses for weapons and ammunition purportedly recovered from Gerard Jones' bedroom.  As a consequence of the defendant police officers' false and unlawful conduct, PLAINTIFF was imprisoned for approximately six (6) days and then compelled to appear in court approximately three (3) times to defend himself against baseless criminal offenses, all of which were ultimately dismissed.

3.      PLAINTIFF seeks (i) compensatory damages for physical injury, psychological and emotional distress, and financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorneys fees, as this Court deems equitable and just.

## JURISDICTION

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1342(3) and (4), as this action seeks redress for the violation of PLAINTIFF's constitutional and civil rights.

5.      Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

2

## VENUE

6.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to PLAINTIFF's claims took place.

## JURY DEMAND

7.      PLAINTIFF demands a trial by jury in this action on each and every one of his claims for which jury trial is legally available.

## THE PARTIES

8.      PLAINTIFF, a citizen of the United States, is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

9.      Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York.

10.      The CITY is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

11.      Defendants WILLIAM CONCANNON ("CONCANNON") (Shield #023380), NICHOLAS LEVESQUE ("LEVESQUE") (Shield #15044), Sgt. EDWIN CHING ("CHING") (Shield #1578), Sgt. FRANKLIN BOHR ("BOHR") (Shied #02618), and "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc. ("DOES") are NYPD police officers who unlawfully detained, frisked, and arrested PLAINTIFF without suspicion of

any illegal activity, lodged false criminal charges against him, and caused him to be maliciously prosecuted.

12.     Defendants CONCANNON, LEVESQUE, CHING, BOHR, and DOES acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the CITY and/or the NYPD.

13.     At the times relevant herein, defendants CONCANNON, LEVESQUE, CHING, BOHR, and DOES violated clearly established rights and standards constituted by the Fourth and Fourteenth Amendments to the United States Constitution and under equivalent New York State constitutional provisions, which reasonable police officers in their respective circumstances would have known.

## STATEMENT OF FACTS

14.     PLAINTIFF is a lifetime resident of the Bronx, New York.

15.     On the evening of June 26, 2014, PLAINTIFF received a telephone call from his girlfriend, Monica Bruce, who asked PLAINTIFF if he could pick her up and escort her home from 3 West Farm Square Road, Apartment 8E, Bronx, New York.

16.     Ms. Bruce was then styling the hair of Ms. Cherille Yon at that apartment.

17.     Ms. Yon was the primary tenant of Apartment 8E at 3 West Farm Road, Bronx, New York.

18.     Ms. Bruce wanted PLAINTIFF to escort her home after she finished Ms. Yon's hair because she did not feel safe traveling alone in that neighborhood.

19.     After receiving Ms. Bruce's call, PLAINTIFF went to Apartment 8E at 3 West Farm Road.

20.     PLAINTIFF arrived at the apartment at approximately 8:00 p.m.

21.     When he arrived, he found Ms. Bruce styling Ms. Yon's hair in the living room of the apartment.

22.     Also present in the living room was a person named Derrick who was related to Ms. Yon and lived in the same building.

23.     PLAINTIFF sat on the couch in the living room with Derrick and watched television while waiting for Ms. Bruce to finish styling Ms. Yon's hair.

24.     Also present in the apartment was Tashawan Rawls ("Tashawan"), Ms. Yon's nephew who did not live at that apartment.

25.     Earlier that evening, Ms. Yon had taken Tashawan out to dinner to celebrate his last day of school.

26.     When PLAINTIFF arrived at Ms. Yon's apartment, Tashawan was playing video games in the bedroom of another nephew of Ms. Yon, Gerard Jones ("Gerard"), while waiting for his mother to pick him up.

27.     Approximately twenty (20) minutes after PLAINTIFF had arrived at Ms. Yon's apartment, police officers knocked on the apartment door.

28.     Ms. Yon opened the door and approximately eight (8) police officers, including defendants CONCANNON, LEVESQUE, CHING, and BOHR, in plain clothes entered her apartment.

29.     The police officers told Ms. Yon they were looking for Gerard.

30.     Upon information and belief, the police officers showed Ms. Yon a document with a picture of Gerard on it and told her that they had a warrant to search the apartment.

31.     Upon information and belief, the police officers never showed Ms. Yon a search warrant to search her apartment.

32.     The police officers told Ms. Yon that Gerard was wanted for a revenge shooting.

33.     The police officers told Ms. Yon they wanted to search Gerard's room.

34.     The police officers told Ms. Yon, Ms. Bruce, Derrick and PLAINTIFF to sit on the couch while they searched Gerard's room.

35.     The police officers told Ms. Yon, Ms. Bruce, Derrick and PLAINTIFF not to use their cell phones.

36.     Some police officers searched Gerard's bedroom while others remained in the living room guarding Ms. Yon, Ms. Bruce, Derrick, and PLAINTIFF.

37.     A police officer asked Ms. Yon, Ms. Bruce, Derrick and PLAINTIFF to write down their names on a piece of paper.

38.     The police officers then asked Ms. Bruce, Derrick, and PLAINTIFF to explain why they were present in Ms. Yon's apartment.

39.     Ms. Bruce explained that she was styling Ms. Yon's hair.

40.     PLAINTIFF explained he was there to pick up Ms. Bruce, his girlfriend, and escort her home once she was done styling Ms. Yon's hair.

41.     The police officers then asked Ms. Yon, Ms. Bruce, Derrick, and PLAINTIFF to provide identification.

42.     Ms. Bruce only had her insurance card, which she provided to the police officers.

43.     Derrick told the police officers that he did not have any identification on him, but could get some from his apartment upstairs.

44.     The police officers told Derrick, in sum and substance, that he was "OK" and that they did not need his identification.

45.     PLAINTIFF provided the police officers with a New York State prisoner identification card.

46.     PLAINTIFF had been incarcerated for Grand Larceny for approximately twenty-eight (28) months.

47.     A police officer asked PLAINTIFF when he had been released from prison.

48.     PLAINTIFF responded that he had been released on parole on or about March 13, 2014.

49.     The police officer then asked PLAINTIFF if he had a parole curfew.

50.     PLAINTIFF stated that he did and that it was 9:00 p.m.

51.     Shortly thereafter, the police officers searching Gerard's room claimed to have found something and brought out what appeared to be a Timberland shoe box.

52.     The police officers did not reveal what, if anything, was in the shoe box.

53.     Police officers also brought Tashawan out of the bedroom and placed him under arrest.

54.     The police officers told PLAINTIFF that they wanted him to come with them to the police station and answer some questions.

55.     The police officers told PLAINTIFF that they could lock him up because they had found him in an apartment where firearms were present.

56.     Even though it was approximately one half hour before 9:00 p.m., police officers also threatened that they could take PLAINTIFF into custody for violating his parole curfew.

57.     PLAINTIFF told the police officers that he did not know anything about any firearms in the apartment, that he was only there to pick his girlfriend up, and that he was not in violation of his parole curfew.

58.     Ms. Bruce confirmed that PLAINTIFF was only there to escort her home.

59.     The police officers told PLAINTIFF and Ms. Bruce that they only needed to take PLAINTIFF to the precinct to ask him some questions.

60.     The police officers told PLAINTIFF and Ms. Bruce that if PLAINTIFF continued to be "nice" and cooperated with them they would only detain him until later that night.

61.     The police officers told PLAINTIFF and Ms. Bruce, in sum and substance, that they could make things "harder" for PLAINTIFF if he did not cooperate with them.

62.     Ms. Bruce asked how long they needed to hold PLAINTIFF to question him.

63.     One of the police officers told Ms. Bruce that he should be free to go by midnight.

64.     Police officers then placed PLAINTIFF in handcuffs.

65.     PLAINTIFF was neither told that he was under arrest nor read his rights.

66.     Police officers took PLAINTIFF and Tashawan and placed them in a police car.

67.     PLAINTIFF and Tashawan were driven to the 46th Precinct.

8

68.     While PLAINTIFF was being processed at the 46th Precinct, a female police officer pulled her gun out and asked PLAINTIFF, in sum and substance, if he could hold it for her "real quick."

69.     The female police officer then told PLAINTIFF that she was only kidding and that PLAINTIFF would probably shoot her if she gave him her gun.

70.     Another police officer, who, upon information and belief defendant Sgt. CHING, asked PLAINTIFF if he knew anyone else who lived in Ms. Yon's apartment.

71.     PLAINTIFF said he did not.

72.     Sgt. CHING responded, in sum and substance, that PLAINTIFF was "fucking lying" and that he knew "the truth."

73.     PLAINTIFF was eventually placed in a holding cell at the 46th Precinct where he remained for several hours.

74.     Upon information and belief, while PLAINTIFF was being held at the 46th Precinct, police officer William CONCANNON provided an Assistant Bronx County District Attorney with information regarding PLAINTIFF's arrest earlier that night.

75.     Upon information and belief, at approximately 11:08 p.m. on June 27, 2014, police officer CONCANNON signed a Criminal Court Complaint charging PLAINTIFF with Criminal Possession of a Weapon in the Second Degree and several other felony, misdemeanor, and New York City Administrative Code weapons related charges.

76.     The criminal court complaint charging PLAINTIFF alleged that at approximately 10:40 p.m. that evening, PLAINTIFF and Tashawan had been found

together in a bedroom in joint custody and control of a handgun, ammunition feeding devices, and several different types of handgun ammunition.

77.     The criminal court complaint charging PLAINTIFF alleged that the bedroom in which PLAINTIFF and Tashawan had been found was located inside of 2120 Ryer Avenue, Bronx, New York – the address of the 46th Precinct.

78.     At some point after being held in a holding cell at the 46th Precinct for several hours, PLAINTIFF was taken by a detective in plain clothes to a room on the second floor.

79.     This detective seemingly acted friendly towards PLAINTIFF.

80.     The detective began to ask PLAINTIFF about guns.

81.     The detective never read PLAINTIFF his rights.

82.     The detective told PLAINTIFF, in sum and substance: "I'm going to be honest with you. I don't give a fuck about this case. All I want to know is whether you can tell me where to get more of these guns."

83.     PLAINTIFF told the detective he did not know what the detective was talking about.

84.     The detective further asked PLAINTIFF, in sum and substance: "If I give you a thousand dollars, could you get me some more guns?"

85.     PLAINTIFF responded that he did not know what the detective was talking about.

86.     The detective told PLAINTIFF, in sum and substance, that if PLAINTIFF would get him some guns, and if everything went "right," he would let PLAINTIFF go home.

87.     PLAINTIFF responded that he did not know anything about any guns.

88.     The detective continued to question PLAINTIFF about guns.

89.     PLAINTIFF continued to tell the detective he did not know anything about any guns.

90.     The detective stopped acting friendly towards PLAINTIFF.

91.     PLAINTIFF asked the detective when he would be allowed to return home.

92.     The detective responded, in sum and substance, that he did not know and that, the way things were going, PLAINTIFF would not be going anywhere anytime soon.

93.     PLAINTIFF was eventually returned to being confined in a holding cell at the 46th Precinct.

94.     At some point while PLAINTIFF was being held at the 46th Precinct, PLAINTIFF asked to see the police officer who had told him that he would be allowed to go home after he answered their questions.

95.     PLAINTIFF never got to see that police officer.

96.     At some point while PLAINTIFF was being held in the 46th Precinct, PLAINTIFF asked when he was going to be released.

97.     A police officer responded to PLAINTIFF, in some and substance, "You must be kidding. You're not being released. You're going to Central Booking."

98.     At or about 1:00 a.m. on June 27, 2014, Ms. Bruce went to the 46th Precinct to find out why PLAINTIFF had not been released.

99.     Ms. Bruce was told to see Sgt. CHING.

100.    When Ms. Bruce saw Sgt. CHING, she explained that she was PLAINTIFF's girlfriend and that she wanted to know when PLAINTIFF would be released.

101.    Sgt. CHING told Ms. Bruce, in sum and substance, that it was "cute" that she was "in love" with PLAINTIFF.

102.    Sgt. CHING further teased Ms. Bruce by saying that PLAINTIFF had been calling several girls since he had arrived at the precinct, but had not called Ms. Bruce.

103.    Sgt. CHING eventually told Ms. Bruce that PLAINTIFF would not be released.

104.    Ms. Bruce asked why PLAINTIFF would not be released.

105.    Sgt. CHING responded, in sum and substance, that PLAINTIFF was not being released because PLAINTIFF was being represented by Tashawan's lawyer, who would not let the police question PLAINTIFF.

106.    Ms. Bruce immediately contacted Tashawan's lawyer to find out whether he, in fact, was representing PLAINTIFF.

107.    Tashawan's lawyer said he was not representing PLAINTIFF.

108.    Ms. Bruce asked Tashawan's lawyer to fax a letter to the 46th Precinct stating that he did not represent PLAINTIFF.  Ms. Bruce understood that Tashawan's lawyer promptly faxed the requested letter to the 46th Precinct.

109.    After Tashawan's lawyer had faxed the letter to the 46th Precinct stating he was not representing PLAINTIFF, Ms. Bruce attempted to again speak to Sgt. CHING, but was told that he was no longer available.

110.    Ms. Bruce asked a police officer if they could question and release PLAINTIFF since Tashawan's lawyer had notified them that he was not representing PLAINTIFF.

111.    The police officer told Ms. Bruce that PLAINTIFF would not be released because he had already been charged with criminal offenses.

112.     The police officer told Ms. Bruce that she could see PLAINTIFF when he was arraigned at Bronx Criminal Court on the following day.

113.    On or about June 27, 2014, PLAINTIFF was transferred from the 46th Precinct to Bronx Central Booking.

114.    At some point while he was being processed at Bronx Central Booking, PLAINTIFF came across Tashawan.

115.    Tashawan told PLAINTIFF that he had learned from his lawyer that he was being charged for possessing guns and that he would be released after he was arraigned.

116.    PLAINTIFF asked if Tashawan knew what he was being charged with and whether he would be allowed to go home after he was arraigned.

117.    Tashawan told PLAINTIFF he did not know.

118.    PLAINTIFF eventually saw a criminal defense lawyer at Bronx Central Booking.

119.    PLAINTIFF learned for the first time from this lawyer that he was being charged with possessing guns and other weapons related charges.

120.    On or about June 27, 2014, PLAINTIFF was arraigned.

121.    At arraignment, PLAINTIFF was charged with Criminal Possession of a Weapon in the 2nd Degree (NYPL 265.03(3)), Criminal Possession of a Firearm (NYPL 265.01-b(1)), Criminal Possession of a Weapon in the 3rd Degree (NYPL 265.02(08)), Criminal Possession of a Weapon in the 4th Degree (NYPL 265.01(1)), Unlawful Possession of Certain Ammunition Feeding Devices (NYPL 265.37), Unlawful Possession of Ammunition (NYADC 10-131(i)(3), and Unlawful Possession of an Ammunition Feeding Device (NYADC 10-131(i)(6).

122.    Upon information and belief, the charges against PLAINTIFF were maliciously lodged by the individual defendants, were without probable cause, and lacked any legal justification.

123.    PLAINTIFF pled "Not guilty" at his arraignment.

124.    The judge set PLAINTIFF's bail at $2,500 and bond at $5,000.

125.    PLAINTIFF was not able to pay the $2,500 bail or find anyone to post the $5,000 bond.

126.    PLAINTIFF was remanded to Rikers Island.

127.    PLAINTIFF returned to court on or about July 2, 2014.

128.    On that day, PLAINTIFF's criminal defense lawyer moved for PLAINTIFF to be released on his own recognizance pursuant to NYCPL 180.80.

129.    Upon information and belief, the Bronx County District Attorney's Office was unable to show good cause why an order releasing PLAINTIFF on his own recognizance pursuant to NYCPL 180.80 should not be issued.

130.    An order releasing PLAINTIFF on his own recognizance was granted and PLAINTIFF was released that same day.

131.     PLAINTIFF was thereafter compelled to return to Bronx County Criminal Court approximately three (3) times.

132.     At PLAINTIFF's last court appearance, on or about January 7, 2015, all charges against PLAINTIFF were dismissed.

133.     Upon information and belief, all charges against Tashawan were dismissed on or about March 18, 2015.

134.     PLAINTIFF was not engaged in any activities that were in violation of any law during the events described above and defendants had no probable cause to arrest PLAINTIFF.

135.     At all times relevant herein, the individual defendant police officers were engaged in a joint venture.  The individual police officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

136.     Defendants' conduct caused PLAINTIFF to suffer loss of liberty, emotional and psychological pain, embarrassment, humiliation, harm to his reputation, and the deprivation of his constitutional rights.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

137.     PLAINTIFF served a Notice of Claim upon the CITY by certified mail on July 10, 2014, within ninety days of the events giving rise to his claim.

138.     More than thirty days have elapsed since PLAINTIFF served his Notice of Claim and the CITY has not offered adjustment or payment thereof.

139.     PLAINTIFF personally served an Amended Notice of Claim upon the CITY on February 4, 2015.

140.     More than thirty days have elapsed since PLAINTIFF served his Amended Notice of Claim and the CITY has not offered adjustment or payment thereof.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Violations of Fourth and Fourteenth Amendment Rights**
**(Individual Defendants)**

141.     PLAINTIFF realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

142.     In committing the acts and omissions complained of herein, defendants acted under color of state law to deprive PLAINTIFF of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

a.   the right to be free from unreasonable search and seizure of his person;

b.   the right to be free from excessive force;

c.   the right to be free from arrest without probable cause;

d.   the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention PLAINTIFF was aware and to which he did not consent;

e.   the right to be free from the lodging of false criminal charges against him by police officers;

f.   the right to be free from malicious prosecution by police officers, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in PLAINTIFF's favor; and

g.   the right to be free from deprivation of liberty without due process of law.

143.     As a direct and proximate result of defendant NYPD police officers CONCANNON's, LEVESQUE's, CHING's, BOHR's, and DOES' deprivation of

PLAINTIFF's constitutional rights, PLAINTIFF suffered the injuries and damages set forth above.

144.     The unlawful conduct of defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

### SECOND CAUSE OF ACTION
**Violations of the New York State Constitution**

145.     PLAINTIFF realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

146.     Such conduct breached the protections guaranteed to PLAINTIFF by the New York State Constitution including, but not limited to, Article I, Secs. 6, 8, 11, and 12, and including the following rights:

   a.   freedom from unreasonable search and seizure of his person and property;

   b.   freedom from arrest without probable cause;

   c.   freedom from use of excessive force;

   d.   freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion or legal justification, and of which wrongful detention PLAINTIFF was aware and did not consent;

   e.   freedom from the lodging of false charges against him by police officers and prosecutors, including on information and belief, by some or all of the individual defendants;

   f.   freedom from malicious prosecution by police officers and prosecutors, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in PLAINTIFF's favor; and

   g.   freedom from deprivation of liberty without due process of law.

147.     The deprivation of PLAINTIFF's rights under the New York State Constitution resulted in the injuries and damages set forth above.

17

## THIRD CAUSE OF ACTION
### Assault and Battery

148.    PLAINTIFF realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

149.    Defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES, without just cause, wilfully and maliciously used physical force against PLAINTIFF causing him injuries.

150.    Defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES committed the foregoing acts intentionally, wilfully, and with malicious disregard for PLAINTIFF's rights, and are therefore liable for punitive damages.

## FOURTH CAUSE OF ACTION
### False Imprisonment

151.    PLAINTIFF realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

152.    Defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES, through the foregoing acts, caused PLAINTIFF to be wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which detention PLAINTIFF was aware and to which he did not consent.

153.    Defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for PLAINTIFF's rights and are therefore liable for punitive damages.

## FIFTH CAUSE OF ACTION
**Malicious Prosecution**

154.    PLAINTIFF realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

155.    Defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES, through the foregoing acts, maliciously commenced a criminal proceeding against PLAINTIFF, which ended in his favor, without probable cause to believe PLAINTIFF was guilty of the crimes charged.

156.    Defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES committed the foregoing acts intentionally, willfully, and maliciously, and are therefore liable for punitive damages.

## SIXTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

157.    PLAINTIFF realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

158.    Defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES, through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused PLAINTIFF to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

159.    Defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES committed the foregoing acts intentionally, willfully, and with

malicious disregard for PLAINTIFF's rights and are therefore liable for punitive damages.

### SEVENTH CAUSE OF ACTION
**Negligence**

160.    PLAINTIFF realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

161.    Defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES owed PLAINTIFF a duty of care, including the duty to exercise due care in the course of their duties as NYPD officers and the duty to protect citizens from the intentional misconduct of other NYPD officers.

162.    Defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES, by the foregoing acts, negligently failed to use due care in the performance of their duties in that they failed to perform their duties with the degree of care that a reasonably prudent and careful officer would have used under similar circumstances.

163.    All of these acts were performed without any negligence on the part of PLAINTIFF and were the proximate cause of injuries to PLAINTIFF.

### EIGTH CAUSE OF ACTION
**Negligent Infliction of Emotional Distress**

164.    PLAINTIFF realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

165.    As police officers acting in the performance of their duties, defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES owed PLAINTIFF a duty of care.

166.    In breach of that duty, defendant NYPD police officers CONCANNON's, LEVESQUE's, CHING's, BOHR's, and DOES' foregoing conduct endangered PLAINTIFF's safety and caused him to fear for his safety.

167.    As a result, PLAINTIFF suffered emotional distress.

**NINTH CAUSE OF ACTION**
*Respondeat Superior*

168.    PLAINTIFF realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

169.    At all relevant times, defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES were employees of the City and were acting within the scope of their employment.

170.    The City is therefore vicariously liable under the doctrine of r*espondeat superior* for the actions of defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES set forth herein.

## DEMAND FOR RELIEF

**WHEREFORE**, PLAINTIFF demands the following relief against the defendants, jointly and severally:

    (a)    compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

    (b)    punitive damages from defendant NYPD police officers CONCANNON, LEVESQUE, CHING, BOHR, and DOES to the extent allowable by law;

    (c)    attorney's fees;

    (d)    the costs and disbursements of this action;

    (e)    interest; and

    (f)    such other and further relief as this Court deems just and proper.

Dated:  New York, New York            BELDOCK LEVINE & HOFFMAN LLP
       February 17, 2016             99 Park Avenue, Suite 2600
                                   New York, New York 10016
                                   (212) 490-0400

                                   /s/Marc A. Cannan
                                   Marc A. Cannan

                                   *Attorneys for Plaintiff Tyreik Williams*